Curia, per Johnson, Ch.
In May 1822, the complainants recovered against defendant’s testator, in the City Court of New York, a judgment for $1093 99, and in January, 1837, they commenced an action on that judgment against him, in the Common Pleas, for Charleston district, in this State, to which he pleaded the Statute of Limitations. He died pending that action, and the complainants afterwards renewed it against the defendant, his executor. The cause has in the end found its way into this Court, and one of the questions was, whether the judgment in New York was or was not barred by the Statute of Limitations of this State. The Circuit Court decided for the complain *228 ant, and whether that was error or not is the only question submitted by this appeal.
That decision was in conformity with the judgment of the Court in Hinton vs. Townes, 1 Hill Rep. 439, when the question was directly made and solemnly decided, the whole Court concurring, and I suppose would not again have been revived, but for the supposition that it had been ruled otherwise by the supreme Court of the United States in McElmoyle vs. Cohen, 13 Peter’s Rep. 312, to which I shall hereafter more particularly refer, for the purpose of shewing that it does not involve the question to be decided here. But as it has been again revived and again argued on general principles, the Court have thought it expedient to use the occasion to put it to rest forever. Yet the whole ground has been so fully covered by the adjudications of our own Courts and those of the United States and our sister States, as to leave but scanty gleanings. The question has been heretofore treated as depending on the construction of the Act of Congress of 1790, passed in pursuance of the authority given to Congress, by the 1st section of the 4th article of the constitution of the United States. The constitution provides that “full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State; and the Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” And the Act, after providing for the mode in which they shall be authenticated, declares that “ the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the State from whence the said records are or shall be taken.” In the earlier cases in this State and in New York, and some of the other States, this Act was regarded as intended merely to prescribe the mode in which the judgments obtained in one of the States should be authenticated to make them evidence in the others, leaving the effect to be determined according to the rules of the common law. They were therefore put on the footing of judgments, strictly foreign, on which debt or assumpsit would lie as on simple contracts, *229 and that the record was only prima facie evidence of the debt; and it was held, that the plea of nul tiel record was inadmissible, because the usual replication of habetur tale recordum, was inapplicable, as the original record could not be inspected, but that under the plea of nil debet the defendant was at liberty to go into evidence to impugn the contract on which the judgment was founded, and consequently might plead any other plea applicable, under the general rules of pleading, to the cause or form of the action. Such was evidently the tendency of the judgment of the court, in Hammond and Hathaway vs. Smith, 1 Brev. Rep. 110, and Flournoy vs. Durke, 2 Brev. Rep. 257, in which it was held that nil debet, and not nul tiel record, was the proper plea in an action on the judgment of a sister State, which would, of course, open the merits of the judgment for examination. Lambkin vs. Nance, 2 Brev. Rep. 99, and Flournoy vs. Durke, were decided at the same term. That, was assumpsit on a judgment obtained in Virginia, and it was held that the action was well brought, and that the plaintiff might have brought debt at his election. The New York cases went on the same principle. In Hitchcock vs. Fitch, 1 Cain’s Rep. 461, and Hubbell vs. Cowdry, 5 Johns. Rep. 132, the judgments of other States are treated as foreign judgments — prima facie evidence only of a debt, and of course open to examination. The principle on which these cases proceeded would obviously have let in the plea of the Statute of Limitations, and it is a little remarkable that its application escaped the observation of the profession until it was made in the case of Hinton vs. Townes, 1 Hill, 440. There seems indeed to have been an undefined and mysterious regard paid to the judgments of the sister States in this respect, altogether at variance with the severe scrutiny to which they were subjected in many others. The question has, however, been re-examined, and stands now on the true foundation. The judgments of a sister State areno longer regarded as merely primafacie evidence of a debt, liable to be opened and rebutted by proof, but as conclusive of the fact of indebtedness. It was so held in Mills vs. Durea, 7 Cranch, 481. Mr. Justice Story, who delivered the judgment of the court, after referring to the constitution and the Act of Congress, says that the judg *230 ment of a sister State may be proved in the manner prescribed by the Act, and such proof is of as high a nature as the inspection by the court of its own record, or as an exemplification would be in any other court of the same State, and the plea of nil debet was therefore inadmissible.
Precisely the same question arose in Massachusetts, and at the same time, (March 1813,) in the case of Bissell vs. Briggs, 9 Mass. Rep. 462, in which Chief Justice Parsons remarks that “judgments rendered in any other States are not, when produced here, as the foundation of actions, to be considered as foreign judgments, the merits of which are to be enquired into, as well as the jurisdiction of the courts rendering them. Neither are they to be considered as domestic judgments rendered in our own courts of record, because the jurisdiction of the courts rendering them is the subject of enquiry. But such judgments, so far as the court rendering them had jurisdiction, are to have, in our courts, full faith and credit.” The effect of the judgments in one State in the courts of another, again came up in Hampton and McConnel, 3 Whea. 234, in which Chief Justice Marshall says that they should have the same credit, validity, and effect, in every other court of the United States, which they have in the State where they were pronounced, and therefore the plea of nil debet could not be pleaded to actions brought upon them.
Much diversity of opinion seems to have existed as to what might be pleaded to an action on a judgment in another State. In Hinton vs. Townes, 1 Hill’s Rep. 445, Judge O’Neall says that it is to be tested by the enquiry whether it would or would not be good in the State where the judgment was obtained; and Chief Justice Marshall, in Hampton vs. McConnel, 3 Wheat. 234, holds the same doctrine. “ And whatever pleas,” says he, “ would be good to a suit thereon in such State,” (the State in which the judgment was obtained,) “ and none others, could be pleaded in any court in the United States.” That, I think, is laying down the rule too broadly, and the whole force of it was not seen at the time, nor was the question in either case necessarily involved. All that was intended by the Act of Congress, was to render the judgment conclusive of every thing decided by it; that is, its effect in the court in which *231 it was obtained, and of necessity, the fact of the judgment, can only be tested by the. plea of nul tiel record. In all other respects, the States are left to prescribe their own forms of pleading. On this principle it was held by the Supreme Court of the United States in McElmoyle vs. Cohen, 13 Peters’s Rep. 312, that the Statute of Limitations of Georgia, which declares that actions on the judgments of another State shall be barred unless brought within five years after judgment rendered, was properly pleaded to a judgment obtained in South Carolina. It seems too that it is now well settled that under the plea of nid tiel record, the jurisdiction of the court which pronounced the judgment may be enquired into. Such is the opinion expressed by Chief Justice Parsons in Bissell vs. Briggs. See also Hall vs. Williams, 6 Pick. 242. In all the cases the rule seems to have been laid down so broadly as to be liable to misinterpretation. If it appear from the record, as by the plea to jurisdiction, that the question was whether one or another of the courts of the State where the cause was tried, had jurisdiction of the subject matter, the judgment on that point would, according to the rule before laid down, be conclusive. But whether the party sued is or is not the same against whom the judgment was obtained, is a question which would necessarily be open in the court where the judgment was obtained, and necessarily so every where else. So too where the proceeding was in rem, as a foreign attachment, the judgment could operate on the thing-only, and not upon the person.
I have gone something out of the way, and perhaps unnecessarily, for the purpose of explaining some doubts in relation to the points before noticed, for the whole court is of opinion that the question here is concluded by the case of Hinton vs. Townes, before cited. I have no question that the Legislature of this State might, as in Georgia, have passed an Act barring actions on the judgments of other States, without any violation, of the constitution or Act of Congress; but the provisions of our statute do not extend to the case. The provisions of it applicable to this question are thati( all actions of account and upon the case; all actions of debt grounded upon any writing or contract without specialty,” shall be barred, &c. The original *232 cause of action here, was contract, but it is no longer so, it has passed into a judgment,.and that is the foundation of the action, and therefore not embraced in our statute; that effect is precisely the same whatever may have been the original cause of action ; it is merged in the judgment; as effectually so as if a bond or other specialty had been' given for a simple contract debt. It has assumed a new; form, and a name not found in our statute.
The case of Cameron vs. Wurtz, 4 McCord, 278, is supposed to conflict with this view, but that too is the resun. of the construction of our own Act, providing for the order in which the debts of a person deceased shall be paid when it becomes necessary to marshal the assets. By the Act of 1789, 5 Stat. at Large, 111, the funeral and other expenses of the last sickness, and the charges of administration, are first to be paid, “ next, debts due to the public; next, judgments, mortgages and executions, the oldest first; next, rent; then bonds or other obligations; and last, debts due on open accountsand it is provided that no “ preference shall be given to creditors in equal degree, when there is a deficiency of assets, except in the cases of judgments and mortgages that shall be recorded, from the time of recording, and executions lodged in the sheriff’s office, the oldest of which shall be first paid, or in those cases where a creditor has a lien on any particular part of the estate;” and it is evident that the preference here given, to mortgages and judgments is in respect to the lien they have on the estate. That of course cannot apply to the judgments of another State; and as they do not fall within the debts described in any of the other classes, they must fall in with the last, and rank as a simple contract debt.
The motion to reverse the Circuit Court decree must therefore be dismissed, and it is so ordered.
Harper, Johnston and Donkin, Chancellors, and O’ Neall, Evans, Butler and Wardlaw, Justices, concurred.